No. 36,395

LAURA R. ADDINGTON (Claimant), *Appellant,* v. J. J. HALL (Respondent), and TRAVELERS' INSURANCE COMPANY and TRAVELERS' INDEMNITY COMPANY (Insurance Carriers), *Appellees.*

(160 P. 2d 649)

Opinion filed July 7, 1945.

*Oscar Ostrum,* of Russell, argued the cause for the appellant.

*LaRue Royce,* of Salina, argued the cause, and *Jerry E. Driscoll,* of Russell, *C. W. Burch, B. I. Litowich, Ernest S. Hampton* and *Howard H. Dunham, Jr.,* all of Salina, were on the briefs for the appellees.

The opinion of the court was delivered by

PARKER, J.: This is another workmen's compensation case. The claimant appeals from a judgment denying compensation for the death of her husband.

It is conceded that at the date of the alleged accidental injury and death the relationship of employer and employee existed, that claim for compensation was properly made and that the only question presented to the trial court was whether the claimant's husband sustained an injury by accident which arose out of and in the course of his employment, from which he died.

The trial court concluded as a matter of law the deceased workman's death was not the result of an accidental injury arising out of his employment, basing its conclusion and subsequent judgment upon findings of fact, which, insofar as pertinent to the issues herein raised, read as follows:

"On May 3, 1943, Joseph Earl Addington was struck with a piece of 2 x 4 in the hands of Jim Hought, as a result of which he died on May 6, 1943. At the time of the injury and for sometime prior thereto, Addington was employed by the respondent as a Trouble Shooter and Hought was employed by respondent as a pumper. Both men were working on the Miller leases in Russell County. On Saturday, May 1, 1943, it having been decided to put on a relief pumper, Don Haynes, production superintendent for respondent, instructed Addington to go to the several pumpers on the leases and make arrangements agreeable among them relative to relieving them on certain days of the week. About 9 or 9:30 o'clock, Monday morning, May 3, 1943, Addington reported to Haynes, 'Doc, I almost got hell whipped out of me this morning.' On being asked what was the trouble, he said, 'Jim wouldn't let me relieve him.' At that time, Addington did not appear to be excited or angry. Haynes then went to see Jim·Hought and came back and told Addington that he should relieve Hought at 8 in the morning. He then assigned Addington to hauling either a wood settling tank or false deck to a settling tank to the L. Miller six, which required the use of a truck or pick-up. When Adding-

ton reported to Haynes, his duty to make arrangements for the relief of Hought was fully performed. At noon, on May 3, 1943, Addington had lunch with his son-in-law, Yewell Caldwell. Some time later, Caldwell was talking with Jim Hought at the warehouse on the E. Miller lease when Addington drove up in a pick-up, got out and came into the warehouse. He passed between Hought and Caldwell, when back 8 or 10 feet in the warehouse, stopped and asked Jim if he had seen Doc (Haynes). Hought replied, 'You God Damn right.' Addington then said, 'I wasn't lying to you, was I?' whereupon Hought 'started to cussing' and stepped out of the warehouse, put his glasses in his car, came back and a fight ensued in which Addington apparently struck the first blow. Hought pushed the attack, followed Addington into the warehouse, where he had retreated after the fight was started outside, and struck him on the head with a piece of 2 x 4, inflicting a mortal wound from which he died on May 6, 1943. The court concludes from the record that Hought was the aggressor in this affair. These men had had no trouble prior to this time. The record is silent as to what business, if any, Addington had at the warehouse on the afternoon of May 3. Nothing in the conduct or language of either Addington or Hought in their conversation with Haynes on the morning of May 3, would indicate to the latter that there might be further trouble between the two men. Prior to the employment of Joseph E. Addington as a relief pumper, James Hought was working as a pumper on the Hall lease seven days per week for a total of 56 hours. For the 6th day of each week he received time and one-half for such time and double time for the 7th day. The rate of pay was approximately $.80 per hour. The employment of J. E. Addington as a relief pumper ordinarily eliminated practically all of the time and one-half and double time pay for each of the regular pumpers, amounting to approximately $40.00 or $50.00 per month. The warehouse on the lease was used for the storage for parts, motor oil and miscellaneous supplies. Jim Hought lived in a house on the Miller lease where he was employed as a pumper, Addington lived in the City of Russell, about 8 miles from the lease."

Before giving consideration to questions raised by appellant and relied on as grounds for reversal of the judgment we pause to note this is not a case where we are called upon to determine whether the judgment is supported by substantial competent evidence. The entire record is not abstracted, the only evidence appearing in the abstract being a short extract from the testimony of one witness with respect to a single factual question presently to be mentioned. Under such circumstances we must assume there was evidence to support all other findings of the trial court and accept them as correct (Buckwalter v. Henrion, 111 Kan. 781, 208 Pac. 645; Amusement Syndicate Co. v. Martling, 118 Kan. 370, 376, 235 Pac. 126; King v. Stephens, 113 Kan. 558, 560, 215 Pac. 311; Mullinville State Bank v. Olson, 134 Kan. 497, 7 P. 2d 37; Wyckoff v. Brown, 135 Kan. 467, 11 P. 2d 720; Farmers State Bank v. Crawford, 140 Kan. 295, 37 P.

2d 14 and *Barker v. Chicago R. I. & P. Rly. Co.*, 158 Kan. 549, 551, 552, 148 P. 2d 493, and cases there cited).

The reason for the rule is well stated in *Mercer v. Kirkwood*, 147 Kan. 637, 77 P. 2d 929, where it was said:

". . . This rule is one of logic as much as it is of law. How could this court say that the trial court erred in its finding of fact without a complete record being available to determine the point?" (p. 638.)

Appellant's first assignment of error is that the trial court erred in refusing to make additional findings. One answer to this contention is to be found in the statement just quoted. Assuming the practice of requesting additional findings of fact in a workmen's compensation case is proper, there is no evidence before us on which we could possibly base a decision that the refusal to make additional findings was not justified. Besides, this court under almost identical circumstances has refused to review such an assignment. In *Buckwalter v. Henrion*, supra, we held:

"When the evidence has not been preserved, an assignment of error based upon the trial court's refusal to make requested findings of fact cannot be reviewed." (Syl. ¶ 5.)

See, also, *Cornell v. Cities Service Gas Co.*, 138 Kan. 607, 27 P. 2d 228, which holds:

"In a workman's compensation case an appeal, on the ground the trial court should have made a different finding, presents no question of law for review where the finding made is supported by substantial competent evidence." (Syl. ¶ 3.)

It is next urged the trial court erred in refusing to set aside the finding in which the court found there was nothing in the language of either Hought or Addington, the deceased, in their conversation with Haynes, the respondent's production superintendent, which would indicate to the latter there might be further trouble between the two men. It is claimed the finding is not only contrary to the evidence but not supported by any evidence. With respect to this finding the abstract does contain some of Haynes' testimony on the subject therein referred to and appellant fortifies it by the statement the record shows no other statement by Haynes to Hought or by Hought to Haynes, regarding what had occurred between Hought and Addington early on the morning of the day of the tragedy. This complies with the requirements of G. S. 1943 Supp. 60-3312, and appellant's contention requires decision. The testimony which she relies upon as requiring the setting aside of such finding reads:

"Q. You said to Addington you would go down and talk to Jim. By that you meant Hought? A. Yes, sir.

"Q. Did you go down and talk to Hought? A. I did.

"Q. Just tell us what that conversation was? A. He was at Elizabeth Miller, number five tank battery, and I drove up and said, 'Jim, I would like to talk to you. Get in the car.' And he said, 'I would like to talk to you.' So I told him that I had sent Joe out there to run relief and we were going to run relief. And he said that Joe come over to relieve him after he had started up his wells. If I remember right he had three running and was at his fourth well. And he said, 'I wouldn't let him relieve me after I had started to work' so I said, 'Well, tomorrow morning,' which would have been Tuesday, 'will be your day off. Joe will relieve you at 8:00 in the morning. You don't need to come out and start your wells. Joe will be here at 8:00 to take over.' And he said, 'That's fine.'

"Q. Did he say anything about being sore at Addington or . . .? A. No, he did not.

"Q. Did he say anything about whipping him or having a fight with him? A. No.

"Q. Was there anything about anything he said, or any of his actions that made you think that he might start a fight with Addington? A. None whatever.

"Q. Had he ever had any trouble out on the lease before? A. No."

In considering the sufficiency of evidence to sustain a finding of fact in a compensation case we are mindful of the well-established rule that our function is limited to determining if there was evidence, whether opposed or not, warranting a reasonable inference although a contrary inference might reasonably be drawn, to sustain such finding. (*Shay v. Hill*, 133 Kan. 157, 299 Pac. 263; *Proffitt v. Aldridge*, 154 Kan. 468, 472, 119 P. 2d 523; *Raynes v. Riss & Co.*, 152 Kan. 383, 386, 103 P. 2d 818 and *Cook v. Dotson Sheet Metal Works*, 157 Kan. 576, 579, 142 P. 2d 709.) Obviously the evidence just quoted speaks for itself and requires no comment when the rule is applied. We have no hesitancy in holding the conclusion of the trial court as to its import was warranted and that the finding must be sustained.

With the findings established there remains but one question for decision. In the light of the facts as found, was the trial court's conclusion of law erroneous? Boiled down, appellant's argument is that because the deceased and Hought quarreled in the morning at a time when the former was executing the orders of the respondent the injury suffered by him at the warehouse in the afternoon and which resulted in his death arose out of his employment. No Kansas cases upholding this contention under circumstances such as we

have before us which sustain this contention are cited. The two decisions which appellant stresses as having that effect are *Stark v. Wilson,* 114 Kan. 459, 219 Pac. 507 and *Cox v. Refining Co.,* 108 Kan. 320, 195 Pac. 863. They have each been given careful consideration. No necessity exists for detailing the factual situations on which they were decided. It suffices to say they were entirely different from the one instantly involved and that nothing said in the opinion of either can be construed as indicating an opinion that its consequences would be held to have resulted from an injury arising out of a workman's employment. Many decisions are also cited from other jurisdictions. They, too, have been examined, and while it must be conceded some of them are authority for the proposition that assaults are compensable if an altercation resulting in injury took place during the course of the employment, irrespective of whether it arose out of employment, they are based on other statutes and not in harmony with our decisions.

The arguments advanced by appellant might be entitled to some weight if this court had not heretofore rejected them. The rule in force and effect in this state was announced in *Peavy v. Contracting Co.,* 112 Kan. 637, 211 Pac. 1113, where it was held:

"An employee working for an employer operating under the workmen's compensation act cannot recover under that act for an injury inflicted by the foreman in an assault upon the employee, unless the employer had reason to anticipate that injury would result if the two continued to work together." (Syl.)

See, also, *Covert v. John Morrell & Co.,* 138 Kan. 592, 595, 27 P. 2d 553, where the rule just quoted was recognized and approved, and it was said:

". . . It would seem to follow that if a workman cannot recover for injuries intentionally inflicted by a fellow employee over whom the employer presumably has some control, he is not entitled to compensation for malicious injury by a third person in no way connected with the employment and entirely outside the employer's authority, unless there is some circumstance that, by reason of his employment, makes him peculiarly and especially subject to assault." (p. 595.)

Appellant apparently concedes the rule in this state is that announced in *Peavy v. Contracting Co.,* supra, but argues the instant case is easily distinguishable in that there it did not clearly appear there had been a prior dispute or altercation between the parties to the affray and there was nothing in the situation to indicate that any trouble might arise or that the employer had any notice of its likeli-

hood. Quite true so far as facts there involved are concerned. Even so, the trouble with appellant's argument is that it overlooks the all-important finding of the court heretofore referred to, which we repeat for purposes of emphasis. It reads:

"Nothing in the conduct or language of either Addington or Hought in their conversation with Haynes on the morning of May 3, would indicate to the latter that there might be further trouble between the two men."

The language just quoted must be given a reasonable construction. So construed it means the respondent had no reason to anticipate that trouble would arise or injury result to either the decedent or Hought if they continued to work on the same location. The finding, therefore, brought appellant's case squarely within the rule announced in *Peavy v. Contracting Co.*, supra, to which we adhere, and precludes her recovery.

The judgment is affirmed.